UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA BAMBERGER WORKS, LLC d/b/a BAM COMMUNICATIONS, a Delaware limited liability company; LLORENTE & CUENCA USA, INC., a Delaware corporation; and LLORENTE & CUENCA MADRID S.L., a foreign corporation,<br><br>                  Plaintiffs,<br><br>v.<br><br>REBECCA BAMBERGER, an individual; RBW HOLDCO, INC., a California corporation; BAM BY BIG LLC, a California limited liability company; AND DOES 1 through 20,<br><br>                  Defendants. | Case No.:  24-CV-706 JLS (DDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART: (1) PLAINTIFFS' *EX PARTE* APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER FOR EXPEDITED DISCOVERY, AND PRESERVATION ORDER; AND (2) PLAINTIFFS' *EX PARTE* MOTION TO FILE DOCUMENTS UNDER SEAL** |

      Presently before the Court is an *Ex Parte* Application for Issuance of Temporary Restraining Order, Seizure Order, Order to Show Cause for Preliminary Injunction, Order for Expedited Discovery, and Preservation Order ("Appl.") filed by Plaintiffs Rebecca Bamberger Works, LLC ("BAM"), Llorente & Cuenca USA, Inc. ("LLYC USA"), and

Llorente & Cuenca Madrid S.L. ("LLYC Madrid") (collectively, "Plaintiffs"). Plaintiffs accompany the Application with an *Ex Parte* Motion to File Documents Under Seal ("Seal Mot."), and declarations by Luisa Garcia ("Garcia Decl."), Todd Renner ("Renner Decl."), and Gregory A. Nylen ("Nylen Decl."). Having carefully considered Plaintiffs' arguments, filings, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Application and Plaintiffs' Seal Motion.

## BACKGROUND

Per the Complaint ("Compl.," ECF No. 1), LLYC USA is a subsidiary of Llorente & Cuenca S.A., "a publicly traded global communications, digital marketing, and public affairs firm located in Spain." Compl. ¶ 33.[1] LLYC Madrid—also affiliated with Llorente & Cuenca S.A.—own "trademark Registration No. 6,066,337 with the United States Patent and Trademark Office" for the mark "LLYC." See *id.* ¶ 53.

BAM is a San-Diego-based public relations and marketing company that works with venture capital brands and venture-backed start-ups. *Id.* ¶¶ 10, 25. Since 2006, BAM has used the mark "BAM" in connection with its services. *Id.* ¶ 26

In March of 2023, LLYC USA acquired 80% of BAM's equity from BAM Chief Executive Officer ("CEO") (and Defendant) Rebecca Bamberger ("Bamberger"). *Id.* ¶¶ 1, 34. Bamberger's corporation—Defendant RBW Holdco, Inc. ("RBW")—retained a 20% stake in BAM. *See id.* ¶ 35. As part of the purchase, RBW and Bamberger agreed to comply with a series of restrictive covenants. *Id.* ¶¶ 38–39. Bamberger also agreed to stay on as CEO subject to an employment agreement. *Id.* Finally, BAM, LLYC USA, RBW, and Bamberger executed an operating agreement stating that BAM would be operated by a three-member board. *Id.* ¶¶ 40–41. The board would include Bamberger and two LLYC representatives. *Id.*

/ / /

---

[1] As Plaintiffs have requested that the Garcia Declaration be filed under seal, the Court refers to allegations in the unsealed Complaint rather than facts averred in the Garcia Declaration.

After the purchase, LLYC USA incorporated the LLYC Mark into the BAM branding to create a new mark: "BAM by LLYC." *Id.* ¶ 52. BAM used this mark in its "digital footprint and documents." *Id*.

Beginning in late 2023, however, relations soured between Bamberger and LLYC USA. The issues began when LLYC USA sought to transition BAM's bank account from Chase Bank to HSBC. *Id.* ¶ 59–60. Rather than transition the funds as ordered by the board, however, Bamberger withdrew hundreds of thousands of dollars from BAM's account. *Id.* ¶¶ 67–71, 79–81. At least some of these funds were transferred to Bamberger's personal account. *Id.*

Around the same time, Bamberger created two California companies—VC Comms Con LLC and Big Magical Events LLC. *Id.* ¶ 82. BAM performed at least $252,000 worth of services for these companies. *Id.* ¶¶ 85–86. Bamberger then dissolved both companies in February of 2024, and neither company has paid BAM. *Id.* ¶¶ 88–91.

BAM's board members pressured Bamberger to explain these actions across multiple meetings between February 14 and April 1, 2024. *Id.* ¶¶ 72–78, 92–100. Bamberger assured the board she would resolve the issues, but nevertheless continued to transfer funds from BAM's account to her personal account until at least March 14. *See id.* ¶¶ 72–100.

Separately from these suspect transactions, Bamberger began working on a plan to take back BAM from LLYC USA. Bamberger first informed the board's chairman that she wanted to "end LLYC's equity interest in BAM" on December 3, 2023. *Id.* ¶ 63. BAM responded that "there was no basis for a unilateral termination of LLYC's interest in BAM." *Id.* ¶ 65. Undeterred, Bamberger—through counsel—sent a March 5, 2024 letter to BAM stating that she was "interested in unwinding the acquisition of BAM by LLYC." *Id.* ¶ 101. BAM responded on March 15, stating that the "[b]oard had ultimate discretion with regard to the operation of [BAM]," *id.* ¶ 102, and Bamberger replied that "every member at BAM [was] aware of th[e] coming transition and [they] ha[d] started a detailed change management plan internally," *id.* ¶ 103 (alterations in original). BAM's board then

told Bamberger that until they received a proposal regarding a potential repurchase, Bamberger should not implement any changes to BAM or inform BAM employees of any change in ownership. *Id.* ¶ 104.

The board's warning came too late. Bamberger created—and shared among BAM employees—an internal document mapping out a transition away from LLYC USA. *Id.* ¶ 117. As part of this plan, Bamberger formed Defendant BAM by BIG LLC ("BIG"). *Id.* ¶ 114. She also registered a new domain name and created a webpage that "copied BAM's website word for word." *Id.* ¶¶ 115, 139. Then, in mid-March of 2024, Bamberger executed the transition. Working with BAM employees, she (1) redirected all traffic from BAM's website to BIG's website, (2) transferred BAM's internal documents and client files to BIG's new Google Drive, (3) emailed clients to inform them that BAM was ending its relationship with LLYC, and (4) sent new invoices with BIG's bank information to clients and directed them to ignore old invoices from BAM. *Id.* ¶¶ 117–149. BIG's website retains the "BAM by LLYC" mark. *See id.* ¶ 113.

Plaintiffs discovered Bamberger's efforts on April 4, 2024, when one of BAM's clients contacted LLYC USA to inquire about a duplicate invoice it received from BIG. *Id.* ¶ 109. This email "made it clear to BAM, the [b]oard, and LLYC [USA] . . . that Bamberger was in the process of completely decimating BAM by stealing clients and redirecting payments away from BAM." *Id.* ¶ 151.

Plaintiffs filed this action on April 19, 2024, asserting, among other causes of action, misappropriation of trade secrets, conversion, fraud, breach of contract, and trademark infringement. *See generally* Compl. The instant Application and Seal Motion followed one week later.

## APPLICATION

## I.    Temporary Restraining Order

### A.    *Legal Standard*

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a

preliminary injunction.  *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009).  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as of right."  *Id.* at 22, 24.

When a plaintiff has not provided notice of their TRO application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes additional requirements.  Namely:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  "The stringent restrictions imposed . . . by Rule 65[] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

"Courts have [thus] recognized very few circumstances justifying the issuance of an *ex parte* TRO."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  "For example, an *ex parte* TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'"  *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).  Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in

which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'"   *Id.* (quoting *Am. Can Co.*, 742 F.3d at 322).   In trademark infringement cases, these include situations "where an alleged infringer is likely to dispose of the infringing goods before the hearing."  *Id.*

### B.    Discussion

Plaintiffs suggest the Court should grant the Application without notice because if Defendants receive notice of the Application, Defendants "will not think twice before moving, hiding, and/or destroying evidence."  Appl. at 32; *see also id.* at 12.

Plaintiffs have made an insufficient showing to prevail on this argument.  "To justify an *ex parte* proceeding [on destruction of evidence grounds], "the applicant must do more than assert that the adverse party would dispose of evidence if given notice."  *Reno Air*, 452 F.3d at 1131 (internal quotation marks omitted) (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)).  Instead, "[p]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history."  *Id.* (first alteration added and internal quotation marks omitted) (quoting *Depinet*, 11 F.3d at 650–51).

Plaintiffs offer only a sparse, seemingly boilerplate declaration from their attorney Gregory Nylen, who avers that "in [his] experience in working with trademark clients and litigation with infringers, *ex parte* seizure is the only way to ensure that goods and services, including websites bearing a counterfeit mark . . . are preserved for use in the legal action."  Nylen Decl. ¶ 11.  The Ninth Circuit, however, rejected a near-identical statement in *Reno Air*.  452 F.3d at 1132.  So too have multiple district courts.  *See, e.g.*, *Acushnet Co. v. Yoo*, No. 13CV2632-MMA (NLS), 2013 WL 12100800, at *3–4 (S.D. Cal. Nov. 1, 2013); *FitTrack Inc. v. Hyperzoo Tech. Ltd.*, No. 23-CV-536 TWR (NLS), 2023 WL 2705844, at *3 (S.D. Cal. Mar. 29, 2023).

/ / /

In an apparent attempt to bolster the above statement, Nylen also cites several trademark cases where courts have granted *ex parte* temporary restraining orders. Nylen Decl. ¶ 12. "Apart from the fact that Defendants are also alleged trademark infringers," however, "Plaintiff[s] ha[ve] not established any reasonable similarity between the parties." *Acushnet Co.*, 2013 WL 12100800, at *3. This is not a case involving numerous, amorphous ecommerce sellers, fungible products, or uncertain actors. Instead, this case involves a marketing CEO who has resided and worked in San Diego for many years. *See* Compl. ¶¶ 10, 12. Plaintiffs have not sufficiently established that Bamberger *specifically*, or persons similar to Bamberger, have a history of destroying evidence.

Moreover, Plaintiffs' own submissions undercut their argument that the risk of destruction of evidence requires *ex parte* relief. First, Plaintiffs' digital consultant indicates that he has already preserved copies of BIG's allegedly infringing website and online drive—presumably, much of the very evidence Plaintiffs fear will be destroyed. *See* Renner Decl. ¶¶ 11–20; *see also Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1097 n.7 (N.D. Cal. 2012) (rejecting *ex parte* TRO in part because the plaintiff had already conducted an extensive investigation and preserved substantial evidence of infringement). Second, Plaintiffs have already filed proof of service with respect to at least some Defendants. *See* ECF No. 4. If the aim was to prevent destruction of evidence by hiding this case from Defendants until said evidence was in safe hands, that ship has sailed.

The Court therefore **DENIES** Plaintiffs' Application for an *Ex Parte* TRO.

## II.   Seizure Order

Plaintiffs next seek "an *ex parte* seizure pursuant to 15 U.S.C. § 1116(d)." Appl. at 31. This statute allows an order of seizure to issue if the court determines, among other required findings, that "the person against whom seizure would be ordered, or persons acting in concert with such a person, would destroy, move, hide, or otherwise make [the matter to be seized] inaccessible to the court, if the applicant were to proceed on notice to such person." *Id.* § 1116(d)(4)(B)(vii). The fundamental inquiry under this section is as follows: "Could the defendants be trusted to comply with the order of a Federal District

Court?"  *See Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, 320 (3d Cir. 2004).

Where courts in this Circuit have refused to grant TROs without notice to defendants, they have also refused to grant *ex parte* seizure orders.  The logic underlying this approach is straightforward—if a plaintiff failed to show a sufficient risk of destruction of evidence to justify an *ex parte* TRO, they have necessarily failed to make the more intensive showing necessary to justify a seizure order.  *See, e.g.*, *Acushnet Co.*, 2013 WL 12100800, at *5.  Here, as Plaintiffs have failed to justify an *ex parte* TRO on destruction-of-evidence grounds, an *ex parte* seizure order may not issue.

## III.   Order for Expedited Discovery

### A.   *Legal Standard*

Courts may allow expedited discovery prior to a Rule 26(f) discovery conference for good cause, *i.e.*, where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).   "In determining whether good cause exists . . . , courts look at the following factors: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [party opposing expedited discovery] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'"  *FitTrack Inc.*, 2023 WL 2705844, at *4 (first alteration added) (quoting *NobelBiz, Inc. v. Wesson*, No. 14CV0832-W (JLB), 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014)).   Though "good cause is frequently found in cases involving claims of infringement," expedited discovery is not appropriate in every infringement case.  *Semitool, Inc.*, 208 F.R.D. at 276–277.

### B.   *Discussion*

Plaintiffs seek expedited discovery to "identify third parties acting in concert with Defendants to infringe on Plaintiffs' rights."  Appl. at 36.  They also suggest that they must act "without delay" to identify Defendants' "sources of equipment and devices containing or storing the counterfeit BAM Mark and LLYC Mark."  *Id.*

1   Though the Court is mindful of Plaintiffs' allegations of ongoing harm, the Court is

2   again left with the distinct impression that Plaintiffs have submitted a boilerplate request

3   ill-tailored to the peculiar circumstances of this case.  This is not a case where an unknown

4   network of manufacturers, distributors, and sellers are flooding the market with knock-off

5   products.  Instead, this case involves a CEO leading the employees of a company in an

6   alleged revolt against the company's majority owner.

7   The Court finds *Rovio*'s analysis instructive.  Here, as in *Rovio*, Plaintiffs have

8   "made no showing that a reasonable basis exists to conclude that there are other individuals

9   or entities involved in the counterfeiting scheme."  907 F. Supp. 2d at 1100.  Relatedly,

10   "Plaintiff[s] ha[ve] ascertained the identities of the entities and the individual allegedly

11   responsible for the conduct it seeks to enjoin," have amassed evidence related to the alleged

12   infringement, and "ha[ve] not articulated any specific missing evidence essential for

13   injunctive relief."  *Id.*; *see also* Appl. Exs. A–C.  Finally, the breadth of Plaintiffs'

14   discovery request weighs against granting expedited discovery.  *See Rovio*, 907 F. Supp.

15   2d at 1110.  While courts have authorized expedited discovery where plaintiffs seek narrow

16   categories of documents or information, *see Semitool, Inc.*, 208 F.R.D. 2 at 277, courts are

17   leery to grant what Plaintiffs here seek—wholesale permission to begin propounding

18   document requests and scheduling depositions.  *See FitTrack Inc.*, 2023 WL 2705844, at

19   *4; *Rovio*, 907 F. Supp. 2d at 1100.

20   At this early stage, therefore, Plaintiffs have not shown good cause for expedited

21   discovery prior to a hearing on a preliminary injunction.  The Court will thus **DENY**

22   **WITHOUT PREJUDICE** Plaintiffs' request for expedited discovery.  If Plaintiffs

23   believes expedited discovery remains necessary, Plaintiffs may file a more narrowly

24   tailored request.

25   ### D.   *Order to Show Cause and Preservation Order*

26   Where courts have denied *ex parte* TROs and seizure orders, they have (1) swiftly

27   scheduled a hearing on a preliminary injunction and (2) issued evidence preservation orders

28   to assuage plaintiffs' concerns regarding the destruction of evidence.  *See, e.g.*, *id.*;

*Acushnet Co.*, 2013 WL 12100800, at *5.  Accordingly, the Court **GRANTS** Plaintiffs' Application to the extent it seeks (1) an order to show cause why a preliminary injunction should not issue and (2) an evidence preservation order.  The Court will set a briefing schedule and hearing date in the conclusion of this Order.

## SEAL MOTION

## I.    Legal Standard

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'"  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming this strong presumption of access.  *Kamakana*, 447 F.3d at 1178 (citing *Foltz*, 331 F.3d at 1135).  The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case."  *Ctr. for Auto Safety*, 809 F.3d at 1102.  When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies.  *Id.*  When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies instead.  *Id.* at 1096–99.

As relevant here, the "compelling reasons" standard typically applies to motions for preliminary injunctions and temporary restraining orders.  *See id.* at 1099.  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify

sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136).

Under the "compelling reasons" standard, the party seeking protection must "present 'articulable facts' identifying the interests favoring continued secrecy *and* . . . show that these specific interests overc[o]me the presumption of access by outweighing the 'public interest in understanding the judicial process.'" *Id.* at 1181 (citation omitted) (first quoting *Foltz*, 331 F.3d at 1136; and then quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "The movant must make this required particularized showing for each document it seeks to seal." *Avnet, Inc. v. Avana Techs. Inc.*, No. 2:13-CV-00929-GMN, 2014 WL 4181831, at *1 (D. Nev. Aug. 20, 2014) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999)). And if the movant wishes to seal an entire document, they must show that their compelling interest cannot be protected by redacting only the sensitive portions of said document. *See In re Roman Cath. Archbishop*, 661 F.3d 417, 425 (9th Cir. 2011); *Foltz*, 331 F.3d at 1137.

The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

## II.  Discussion

Plaintiffs first point out that 15 U.S.C. § 1116(d)(8) requires that "a[ seizure] order under this subsection, together with the supporting documents, shall be sealed until the person against whom the order is directed has an opportunity to contest such order." Courts, however, routinely unseal case files after denying plaintiffs' requests for seizure orders. *See Rovio*, 907 F. Supp. 2d at 1101; *Acushnet Co.*, 2013 WL 12100800, at *5. As the Court has determined that a seizure order is not justified, the Court declines to seal the

Application on that ground.

Plaintiffs next request to file the Garcia and Renner Declarations (Exhibits A and B of the Application) under seal.  Plaintiffs point out that these declarations contain sensitive and confidential business information, including BAM's "business strategies, third-party outreach, business relationships, client lists, sales strategies, and financial information." Seal Mot. at 5.   In support, Plaintiffs point to select exhibits associated with the declarations: Exhibits 7, 9, 10, 14, 15, 17, 18, 19, 20, and 21 of the Garcia Declaration and Exhibits 3 and 4 of the Renner Declaration.  *Id.*

Plaintiffs are correct that sensitive business information, including "customer names," "internal documents," "business plans," and "financial records" may be filed under seal.  *See, e.g.*, *Apex.AI, Inc. v. Langmead*, No. 5:23-CV-02230-BLF, 2023 WL 4157629, at *2 (N.D. Cal. June 23, 2023).  However, requests to seal must be narrowly tailored—a party may not seek to seal an entire document where redaction would suffice. *See id.* at *1 (granting a request to seal where the moving party, rather than seek to seal declarations in their entirety, identified specific paragraphs and exhibits that should be sealed); *see also In re Roman Cath. Archbishop*, 661 F.3d at 425.

The Court is persuaded that *select portions* of the Garcia and Renner Declarations should be filed under seal.  *See, e.g.*, Garcia Decl. Ex. 17 (containing a list of select BAM clients).  The Court also recognizes, however, that large portions of the Declarations contain information for which sealing is not justified.[2]  And, as it is Plaintiffs' burden to offer compelling reasons to seal each *portion* of documents they believe should be sealed, the Court will not parse the Declarations on Plaintiffs' behalf.

The Court will instead take the following approach.  The Court will allow Plaintiffs to file the Application, the Seal Motion, and all associated material—including the Garcia and Renner Declarations—under seal *for now*.  By the date of the preliminary injunction

---

[2] Much of the Garcia Declaration, for instance, parrots allegations contained within the unsealed Complaint.

hearing, Plaintiffs **MAY FILE** a renewed motion to seal that identifies specific portions of the Declarations and/or Application that should be sealed and offers compelling reasons to seal each identified portion.  Plaintiffs **SHALL** accompany said motion with a copy of the Application and Declarations that includes Plaintiffs' proposed redactions.  If Plaintiffs do not file such a motion, the Court will order the Application and all associated documents unsealed in their entirety.

**CONCLUSION**

In light of the foregoing, the Court **ORDERS** as follows:

1.      Plaintiffs' request for an *ex parte* TRO is **DENIED**.

2.      Plaintiffs' request for an *ex parte* seizure order is **DENIED**.

3.      Plaintiffs' request for expedited discovery is **DENIED WITHOUT PREJUDICE**.

4.      Plaintiffs' request for an order to show cause why a preliminary injunction should not issue is **GRANTED**.  The Court will construe Plaintiffs' Application—only to the extent it seeks a TRO—as a motion for a preliminary injunction.  Plaintiffs **SHALL SERVE** Defendants with the summons, Complaint, Application, and all other documents filed in this case, including this Order, within two (2) days of the date this Order is filed.  Plaintiffs **SHALL FILE** proofs of service with the Court and submit a new proposed order to the Court via email by Friday, May 3, 2024.  Defendants **SHALL FILE** any opposition by Wednesday, May 8, 2024.  Plaintiffs **MAY FILE** any reply by Friday, May 10, 2024.  The Court warns the parties that a failure to oppose any motion may constitute consent to granting the motion under Civil Local Rule 7.1(f)(3)(c).

5.      A hearing on Plaintiffs' motion for a preliminary injunction is **SET** for Thursday, May 16, 2024, at 1:30 p.m. in Courtroom 4D of the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA, 92101.

6.      The Court **ORDERS** Defendants to take reasonable steps to preserve any records, documents, communications, or stored information, regardless of medium, either (1) using/containing the BAM by LLYC, LLYC, and BAM marks, or a substantially

13

similar mark; or (2) relating to the advertising, promoting, marketing, offering for sale, distributing, or collecting accounts receivable for services associated with said marks or substantially similar marks.  The Court further **ORDERS** Defendants to take reasonable steps to preserve any records, documents, communications, or stored information, regardless of medium, either (1) using/containing BAM's confidential and proprietary information or trade secrets; or (2) relating to the advertising, promoting, marketing, offering for sale, distributing, or collecting accounts receivable for services offered using said confidential or proprietary information or trade secrets.

7.     The Clerk of the Court **SHALL FILE** the Application, the Seal Motion, and all associated declarations and exhibits under seal.  On or before <u>Thursday, May 16, 2024</u>, Plaintiffs **MAY FILE** a renewed motion to seal that identifies specific portions of the Application and associated documents for which compelling reasons exist to prevent public access, accompanied by a copy of the Application and associated documents that incorporates Plaintiffs' proposed redactions.  If Plaintiffs elect not to file said motion, the Court will order all documents unsealed in their entirety.

8.     The Court otherwise **DENIES** Plaintiffs' Application and Motion to Seal.

**IT IS SO ORDERED.**

Dated:  April 30, 2024

Hon. Janis L. Sammartino
United States District Judge